UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

JOSEPH WEINFELD et al.,

    Plaintiffs,

vs.

BILL L. MINOR et al.,

    Defendants.

3:14-cv-00513-RCJ-WGC

ORDER

This is a shareholder derivative action. Pending before the Court is a Motion to Dismiss (ECF No. 57). For the reasons given herein, the Court grants the motion, with leave to amend.

I.    **FACTS AND PROCEDURAL HISTORY**

Sixteen individuals and Congregation Beth Joseph brought this shareholder derivative action in the Eastern District of New York on behalf of Precious Minerals Mining & Refining Corp. ("PMMR") against PMMR President Bill Minor and PMMR Board Members John Reynolds and Walter Marting for breach of fiduciary duties, unjust enrichment, abuse of control, usurpation of corporate opportunities, and ultra vires actions. PMMR is a Nevada corporation holding certain mining rights in Lyon County, which it exercises under permission of the U.S. Forest Service ("USFS") (which owns the relevant land) to mine a substance sold commercially as Orykta and used as fertilizer and animal feed. (Second Am. Compl. ¶ 1, ECF No. 54). From

1999 to 2001, Minor sold shares of PMMR to investors throughout the United States and Canada, including Plaintiffs, who are New York residents. (*Id.* ¶¶ 3, 31).

Minor used PMMR "as his own personal piggybank," selling Orykta to only one customer in Costa Rica over a 14-year period. (*Id.* ¶ 5). Minor repeatedly misrepresented PMMR's prospects to shareholders, including lying about a nonexistent imminent contract with China, in order to deflect scrutiny, and he refused to entertain sales leads from them, even threatening bodily harm when they made suggestions. (*Id.* ¶¶ 6–7, 59–66). Minor has used a fraudulent stock transfer document purporting to transfer non-existent shares to himself in order to falsely portray himself as a majority shareholder. (*Id.* ¶¶ 69–73). Minor made false promises of dividend distributions in order to deflect questions about the viability of PMMR. (*Id.* ¶¶ 74–76).

All Defendants consistently failed to provide basic information about PMMR to shareholders, with Minor even threatening bodily harm when they made requests. (*Id.* ¶ 8). Defendants have not produced an audited financial statement since 1995 and have produced only one unaudited financial statement from the fourth quarter of 2009. (*Id.* ¶ 9). Defendants failed to properly file for various business permits and to file correct tax returns, jeopardizing the corporation's legal status. (*Id.* ¶¶ 10–11). The failure of Defendants to maintain compliance with the USFS's terms of permissible activities has resulted in a criminal and civil investigation of PMMR. (*Id.* ¶¶ 54–57).

Although PMMR obtained approximately $15–20 million from the sale of its stock to shareholders, it has never made a profit and has failed to account for these funds. (*Id.* ¶¶ 78, 80). Rather, Defendants have simply awarded themselves large compensation packages and paid themselves large consultancy fees. (*Id.* ¶ 78). Minor also paid for his son's flying lessons using PMMR's assets. (*Id.* ¶ 79).

Minor abused his control of PMMR by treating PMMR's assets as his own and transferring PMMR's assets into his own name, i.e., the title of at least one of PMMR's mining claims was transferred into Minor's name from 2007–2010. (*Id.* ¶¶ 81–83). At various times, Minor transferred mining claims between himself and PMMR to suit his personal needs. (*Id.* ¶ 84). Defendants have usurped corporate opportunities by selling Orykta through a company named Wrightsville Fertilizer Co. ("WFC"); Plaintiffs deduce this from the fact that there is no evidence WFC ever paid PMMR to purchase Orykta. (*Id.* ¶ 85). Defendants have engaged in ultra vires actions by issuing stock, stock options, and rights without shareholder approval, thereby diluting the value and control of existing shareholders. (*Id.* ¶ 86).

The U.S. District Court for the Eastern District of New York transferred the case to this District under 28 U.S.C. § 1404(a) as an alternative to a request to dismiss for lack of personal jurisdiction and improper venue. The transferor court did not rule on contemporaneous requests to dismiss the First Amended Complaint ("FAC") for failure to comply with Rules 8(a), 9(b), and 23.1(b). This Court dismissed the FAC under the latter rule and Rule 11(a) because it was not verified or even signed by any attorney. Plaintiffs filed the Second Amended Complaint ("SAC"), and Defendants have moved to dismiss it.

## II.   LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for

failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).  The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts pertaining to his own case making a violation "plausible," not just "possible." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) (citing *Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").  That is, under the modern interpretation of Rule 8(a), a plaintiff must not only specify or imply a cognizable legal theory (*Conley* review), but also must allege the facts of his case so that the court can determine whether the plaintiff has any basis for relief under the legal theory he has specified or implied, assuming the facts are as he alleges (*Twombly-Iqbal* review).  Put differently, *Conley* only required a plaintiff to identify a major premise (a legal theory) and conclude liability therefrom, but *Twombly-Iqbal* requires a plaintiff additionally to allege minor premises (facts of the plaintiff's case) such that the syllogism showing liability is logically complete and that liability necessarily, not only possibly, follows (assuming the allegations are true).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the

complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

**III.   ANALYSIS**

    **A.   The *Gottesman* Action**

Defendants first argue that the claims are precluded by a case finally adjudicated in the New York courts. (*See* Order in *Gottesman v. Minor*, No. CV-41467-10/KI, ECF No. 59-3). There, Emil Gottesman (who is not a party to the present case, but who Defendants claim is a member of Congregation Beth Joseph, as are the other Plaintiffs) sued Minor (then President and Chairman of the Board) for waste, fraud, usurpation, breach of fiduciary, etc., based on Minor's acts occurring no later than 2003. (*Id.* 1–2). The court granted summary judgment to Minor. (*Id.* ¶ 4).

The Court finds that claim preclusion does not apply. Plaintiffs were neither parties nor privies to the previous action. It is not disputed that they were not parties. Defendants argue that under New York law, Plaintiffs are in privity with Gottesman:

> Because the claim asserted in a stockholder's derivative action is a claim belonging to and on behalf of the corporation, a judgment rendered in such an

>action brought on behalf of the corporation by one shareholder will generally be effective to preclude other actions predicated on the same wrong brought by other shareholders. The foregoing rule is qualified by the condition that the judgment being raised as a bar not be the product of collusion or other fraud on the nonparty shareholders and by the further condition that the shareholder sought to be bound by the outcome in the prior action not have been frustrated in an attempt to join or to intervene in the action that went to judgment.

*Parkoff v. Gen. Tel. & Elecs. Corp.*, 425 N.E.2d 820 (1981) (citations omitted).

But New York law may not be applicable here. The Court must first determine whether Nevada's or New York's choice of law rules apply before it can determine which state's substantive law applies. When a district court orders a change of venue, the choice of law rules of the transferor jurisdiction follow the case if personal jurisdiction and venue were proper in the transferor court, i.e., § 1404(a) transfers, *see Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964), but the choice of law rules of the transferee jurisdiction control where venue or personal jurisdiction in the transferor jurisdiction was not proper, i.e., § 1406(a) transfers, *see Nelson v. Int'l Paint Co.*, 716 F.2d 640, 643 (9th Cir. 1983). The transferee court must determine whether the transfer had the effect of curing a defect in venue or personal jurisdiction, and if so, it applies the choice of law rules of the transferee jurisdiction. *Muldoon v. Tropitone Furniture Co.*, 1 F.3d 964, 966–67 (9th Cir. 1993). Here, the transferor judge in the Eastern District of New York considered both §§ 1404(a) and 1406(a). (*See* Transfer Order, ECF No. 23). Although the transferor judge expressed reservations about personal jurisdiction over Defendants in New York, he ultimately transferred under § 1404(a) because "Nevada is a superior forum." (*Id.* 13).

The question of personal jurisdiction or venue in New York remains open, then. This Court must address the issues, because it cannot impose New York's choice of law rules if personal jurisdiction or venue in New York was lacking. The Court agrees with the transferor judge that Defendants as Nevada residents are not "at home" in New York for the purposes of general jurisdiction. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014). As to specific

jurisdiction, the relationship must arise out of minimum contacts a defendant creates with the forum state, not simply out-of-forum contacts the defendant creates with persons who reside in the forum state. *See Walden v. Fiore*, 134 S. Ct. 1115, 1121–23 (2015). Plaintiffs have alleged enough here, because Defendants' contacts with New York Plaintiffs were not purely in Nevada. Rather, Defendants did business with New York Plaintiffs while the Plaintiffs were in New York, routinely sending communications to that state, and even visiting the state on at least one occasion to meet with Plaintiffs to address their concerns giving rise to this lawsuit. Nor would the exercise of personal jurisdiction have been unreasonable in this case. As to venue, there was venue in the Eastern District of New York under 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claim is alleged to have occurred there, i.e., the December 2008 meeting in Brooklyn, New York at which Minor allegedly lied about the prospect for a contract with China.

The Court being satisfied that transfer was not required under § 1406(a), New York's choice of law rules apply. Under New York law, the state of incorporation governs the substance of shareholder derivative actions. *See Hart v. Gen. Motors Corp.*, 517 N.Y.S.2d 490, 492 (App. Div. 1987) (citing *Diamond v. Oreamuno*, 301 N.Y.S.2d 78 (1969)). That means Nevada law governs the law of corporations in this case, because PMMR is a Nevada corporation. The *Parkoff* rule of claim preclusion in shareholder derivative actions is particular to the law of corporations, and the Court therefore finds that under New York's own choice of law rules *Parkoff* does not apply here (unless the Nevada Supreme Court has itself adopted the rule).

The Nevada Supreme Court has noted in an unpublished opinion that under the Restatement (Second) of Judgments § 59(3)(a) (1982), sole or controlling stockholders may be found to be in privy with the corporation itself. Apart from that, the Court can find no rule in Nevada similar to the *Parkoff* rule. The Restatement states a general rule against claim

preclusion, with several exceptions. *See id.* § 59.  The potentially applicable exception here is subsection (2), which states:

> The judgment in an action to which the corporation is a party is binding under the rules of res judicata in a subsequent action by its stockholders or members suing derivatively in behalf of the corporation, and the judgment in a derivative action by its stockholders or members is binding on the corporation.

*Id.* § 59(2).  This does not directly answer the precise question presented here: whether a judgment in an action by a corporation's stockholders suing derivatively on behalf of the corporation is binding under the rules of res judicata in a subsequent action by other stockholders suing derivatively on behalf of the corporation.  The Restatement provides more guidance, however:

> Whether the judgment in . . . a representative suit is binding upon all stockholders or members is determined by the rules stated in §§ 41 and 42.  If it is binding under those rules, it precludes a subsequent derivative action by stockholders or members who were not individually parties to the original action.

*Id.* § 59 cmt. c.  Section 41 in turn binds parties to judgments entered in actions where the following persons were parties: (1) a trustee of an estate or interest of which the party to be bound was a beneficiary; (2) a person invested with authority by the party to be bound to represent him; (3) an executor, administrator, guardian, conservator, or similar fiduciary of an interest of which the party to be bound was a beneficiary; (4) an official or agency invested by law with authority to represent the interests of the party to be bound; and (5) the representative of a class of persons similarly situated, designated as such with the approval of the court, of which the party to be bound is a member. *Id.* § 41(1)(a)–(e).  None of these exceptions applies here.  Section 42 provides exceptions to § 41 that the Court needn't address, because no provision of § 41 applies.

Although the Third Circuit has ruled that because derivative claims belong to a corporation itself, shareholders asserting such claims are necessarily bound by a previous

adjudication of the same claims brought by other shareholders, *see Cramer v. Gen. Tel. & Elecs. Corp.*, 582 F.2d 259, 267 (3d Cir. 1978), the Ninth Circuit has distinguished *Cramer* where the earlier plaintiff(s) did not purport to represent the corporate entity, *see Mertens v. Black*, 948 F.2d 1105, 1106 (9th Cir. 1991) (holding that ERISA beneficiaries' claims were not precluded by the previous adjudication of similar claims of another beneficiary where the previous claimant did not purport to represent the ERISA plan but only himself). Although the *Gottesman* court noted that Gottesman's affidavit included claims implicating doctrines such as corporate waste, (*see* Order in *Gottesman v. Minor* 1–2), Gottesman's claim was for common law fraud and was pursued only on his own behalf, and the court dismissed for failing to state a claim under that theory; it did not treat the claim as a derivative shareholder claim.

The Court finds that the *Gottesman* Action does not preclude the present lawsuit because Plaintiffs were not privies thereto. Furthermore, the *Gottesman* court made clear that the allegations in that case concerned acts "occur[ing] no later than August 5, 2003." (*See id.* 2). It is not clear when each of the acts are alleged to have occurred in the present case. The Court will therefore not presume at the dismissal stage that they are only the same acts complained of in the *Gottesman* Action.

      **B.**      **The *Curley* Action**

Defendants next argue that the claims are precluded by a case finally adjudicated in the Nevada courts. (*See* Order in *Curley v. PMMR*, No. CV08-1954, ECF No. 59-2). In that case, the plaintiffs asked the Nevada court to order an election of directors for PMMR. The court dismissed the case as moot after PMMR agreed to hold an election of directors. Curley was the only named plaintiff in that case. He sought to represent other stockholders, but the court dismissed the case as moot, which is not a final adjudication on the merits of anything, much less

the particular claims of wrongdoing brought here.  The Court therefore finds that the *Curley* Action does not preclude the present lawsuit.

**C.      Rule 23.1**

Defendants next argue that some Plaintiffs have failed to verify the SAC as required by Rule 23.1, and that the SAC does not contain particularized allegations of any demand made on the directors nor any particularized allegations of why a demand would have been futile, as also required by the rule.  It is true that Plaintiffs Carl Isaac, Gerald Katz, Solomon Schlafrig, Jacob Kellner, David Goldstein, David Schwartz, and Hannah Cohen have not verified the SAC.  Those Plaintiffs' claims are therefore dismissed, without leave to amend. *See* Fed. R. Civ. P. 23.1(b).  The Court will not give leave to amend again for these Plaintiffs to verify the Complaint, because it dismissed the FAC for precisely this reason (failure to verify the FAC).

Next, the SAC must "state with particularity . . . any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members []and the reasons for not obtaining the action or not making the effort."  Fed. R. Civ. P. 23.1(b)(3)(A)–(B).  Plaintiffs allege that "Aside from previous counsel's Demand Letter to Defendant/s [sic], Plaintiffs have not made another pre-suit demand . . . because such a demand would be futile . . . ." (Second Am. Compl. ¶ 94).  Plaintiffs allege a demand would be futile because the current directors (Minor and Reynolds) and the former director (Marting) each "face[] a substantial likelihood of liability for [their] actions during [their] membership on the Board" and these Defendants' own pursuit of the allegations would expose their own misconduct such that they are fatally conflicted. (*Id.* ¶¶ 96–100).

"Although Rule  23.1 supplies the pleading standard for assessing allegations of demand futility, '[t]he substantive law which determines whether demand is, in fact, futile is provided by the state of incorporation of the entity on whose behalf the plaintiff is seeking relief.'"

*Rosenbloom v. Pyott*, 765 F.3d 1137, 1148 (9th Cir. 2014) (quoting *Scalisi v. Fund Asset Mgmt.*, L.P., 380 F.3d 133, 138 (2d Cir. 2004)) (alteration in *Rosenbloom*). In Nevada, allegations that a majority of directors participated in the wrongful acts is not enough. *Shoen v. SAC Holding Corp.*, 137 P.3d 1171, 1180–81 (Nev. 2006). The Nevada Supreme Court has adopted the approach of the Delaware Supreme Court, finding that the underlying standards of director interestedness and the business judgment rule are incorporated into the antecedent pleading issue of demand futility:

> [A] plaintiff challenging a business decision and asserting demand futility must sufficiently show that either the board is incapable of invoking the business judgment rule's protections (e.g., because the directors are financially or otherwise interested in the challenged transaction) or, if the board is capable of invoking the business judgment rule's protections, that that rule is not likely to in fact protect the decision (i.e., because there exists a possibility of overcoming the business judgment rule's presumptions that the requisite due care was taken when the business decision was made).

*Id.* at 1181 (citing *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984)). Where a decision is carried out by a majority of disinterested directors, the presumption of due care is "bolstered," and the plaintiff has a "heavy burden" to avoid a presuit demand. *Id.* (citing *Grobow v. Perot*, 539 A.2d 180, 190 (Del. 1988)).

According to the original Complaint, Reynolds was a director of PMMR at the time the present lawsuit was initiated, Marting was a director "during the time of the complaints alleged herein," and Minor was the President and had held various officer positions. (*See* Compl. ¶¶ 32–34, ECF No. 1). The SAC contains similar allegations. (*See* Second Am. Compl. ¶¶ 32–34). Without allegations concerning which persons (Defendants and non-defendants alike) constituted the entire Board at the relevant times, the Court cannot find that demand futility has been pled with particularity under Nevada law, because the Court cannot determine which and what fraction of board members were disinterested in various actions of the Board and therefore cannot even determine to which acts or omissions the business judgment rule should apply.

Moreover, as Defendants note, there are scarce allegations of the wrongdoings of Reynolds and Marting. The vast majority of allegations focus on Minor, and it is unclear from the SAC whether he was a director at the time the present lawsuit was filed; he is only alleged to have been an officer as of the time of the filing of the Complaint.

In their response, Plaintiffs claim that they sent a demand letter to the Board in June 2008, and at that time the Board consisted entirely of Minor, Reynolds, and Marting. Plaintiffs cite their allegation in paragraph 27 of the Complaint. Paragraph 27 of the Complaint is the same as paragraph 27 of the SAC. The paragraph reads in its entirety:

> In June of 2008, previous counsel to a group of local investors sent a letter to the Corporation and Defendant Mr. Minor spelling out their concerns about specific wrongdoings and demanding immediate remedial action be taken. The letter stated that in the event the shortcomings are not addressed, the investors themselves may pursue legal action. This Demand Letter was met with complete inaction.

(Second Am. Compl. ¶ 27). The allegations made therein are not the same as what is claimed in the response brief, and they do not satisfy Rule 23.1. The allegation is that other shareholders sent a demand letter, not Plaintiffs. Even assuming it doesn't matter who sent the demand letter, the allegation is conclusory as to the demand. It does not specify with particularity what complaints were made but merely notes that the letter included particular complaints. The allegation also seems to imply that Minor was not a director at the time the demand letter was sent, whereas the response brief claims he was. Even assuming the response brief could substitute for pleading allegations, which it cannot, the response brief fares no better in this regard. Furthermore, if Plaintiffs were to rely on the June 2008 demand letter, the affirmative defense of the statute of limitations would appear on the face of the SAC, necessitating dismissal for that reason, because events complained of in June 2008 must have both occurred and been discovered before that date, the Complaint was not filed until 2014, and the longest limitations period at issue here is four years. *In re Amerco Derivative Litig.*, 252 P.3d 681, 703 (Nev. 2011)

(three-year limitations period for breach of fiduciary duty); *Nanyah Vegas LLC v. Rogich*, No. 66823, 2016 WL 606896, at *1 (Nev. Feb. 12, 2016) (four-year limitations period for unjust enrichment, which is in the nature of an unwritten contract); Nev. Rev. Stat. § 11.220 (four-year limitations period for actions not otherwise provided for, assuming abuse of control, usurpation of corporate opportunities, and ultra vires actions fall into this category).

The Court disagrees with Defendants, however, that amendment is futile.  The Court will grant leave to amend one final time to cure the deficiencies noted herein.  Specifically, Plaintiffs must allege: the identities of all of the board members at the time the lawsuit was filed; the details of any presuit demand made to them, i.e., the date and method of the demand and the specific acts thereby complained of; and (if Plaintiffs wish to allege futility) which directors were self-interested and how, which directors approved which complained-of acts, and how the complained-of acts approved were unprotected by the business judgment rule.

**D.     The Merits, Marting and Reynolds, and the Statute of Limitations**

Defendants also attack the sufficiency of the allegations generally, argue that no claims at all have been articulated against Marting and Reynolds, and argue that the statute of limitations has run on the claims, in any case.  The Court will not examine these arguments directly at this time.  Plaintiffs may amend the allegations or not with respect to these issues when filing a third amended complaint, but if the Court finds the allegations lacking for any of these reasons it will not give leave to amend again.

///

///

///

///

///

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 57) is GRANTED, with leave to amend.

IT IS SO ORDERED.

DATED: This 8th day of March, 2016.

_____
ROBERT C. JONES
United States District Judge