# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

_____

|  |  |  |
|---|---|---|
| JOSEPH WEINFELD et al., | ) ) ) | |
| Plaintiffs, | ) ) | 3:14-cv-00513-RCJ-WGC |
| vs. | ) ) | **ORDER** |
| BILL L. MINOR et al., | ) ) | |
| Defendants. | ) ) ) | |

_____

This is a shareholder derivative action. Pending before the Court is a Motion to Dismiss (ECF No. 92). The Court grants the motion in part and denies it in part, with leave to amend in part.

## I.       FACTS AND PROCEDURAL HISTORY

Sixteen individuals and Congregation Beth Joseph brought this shareholder derivative action in the Eastern District of New York on behalf of Precious Minerals Mining & Refining Corp. ("PMMR") against Bill Minor, John Reynolds, and Walter Marting for breach of fiduciary duties, unjust enrichment, abuse of control, usurpation of corporate opportunities, and ultra vires actions. PMMR is a Nevada corporation holding certain mining rights in Lyon County, which it exercises under permission of the U.S. Forest Service ("USFS") (which owns the relevant land) to mine a substance sold commercially as Orykta and used as fertilizer and animal feed. (Third Am. Compl. ¶ 1, ECF No. 54). From 1999 to 2001, Minor sold shares of PMMR to investors

1   throughout the United States and Canada, including Plaintiffs, who are New York residents. (*Id.*

2   ¶¶ 3, 31).

3          Minor used PMMR "as his own personal piggybank," selling Orykta to only one

4   customer in Costa Rica over a 14-year period. (*Id.* ¶ 5).  Minor repeatedly misrepresented

5   PMMR's prospects to shareholders, including lying about a nonexistent imminent contract with

6   China, in order to deflect scrutiny, and he refused to entertain sales leads from them, even

7   threatening bodily harm when they made suggestions. (*Id.* ¶¶ 6–7, 49–64).  Minor has used a

8   fraudulent stock transfer document purporting to transfer non-existent shares to himself in order

9   to falsely portray himself as a majority shareholder. (*Id.* ¶¶ 69–73).  Minor made false promises

10  of dividend distributions in order to deflect questions about the viability of PMMR. (*Id.* ¶¶ 74–

11  76).

12         All Defendants consistently failed to provide basic information about PMMR to

13  shareholders, with Minor even threatening bodily harm when they made requests. (*Id.* ¶ 9).

14  Defendants have not produced an audited financial statement since 1995 and have produced only

15  one unaudited financial statement from the fourth quarter of 2009. (*Id.* ¶ 10).  Defendants failed

16  to properly file for various business permits and to file correct tax returns, jeopardizing the

17  corporation's legal status. (*Id.* ¶¶ 11–13).  The failure of Defendants to maintain compliance with

18  the USFS's terms of permissible activities has resulted in a criminal and civil investigation of

19  PMMR. (*Id.* ¶¶ 53–57).

20         Although PMMR obtained approximately $15–20 million from the sale of its stock to

21  shareholders, it has never made a profit and has failed to account for these funds. (*Id.* ¶¶ 78, 80).

22  Rather, Defendants have simply awarded themselves large compensation packages and paid

23  themselves large consultancy fees. (*Id.* ¶ 78).  Minor also paid for his son's flying lessons using

24  PMMR's assets. (*Id.* ¶ 79).

Minor abused his control of PMMR by treating PMMR's assets as his own and transferring PMMR's assets into his own name, i.e., the title of at least one of PMMR's mining claims was transferred into Minor's name from 2007–2010. (*Id.* ¶¶ 81–83). At various times, Minor transferred mining claims between himself and PMMR to suit his personal needs. (*Id.* ¶ 84). Defendants have usurped corporate opportunities by selling Orykta through a company named Wrightsville Fertilizer Co. ("WFC"); Plaintiffs deduce this from the fact that there is no evidence WFC ever paid PMMR to purchase Orykta. (*Id.* ¶ 85). Defendants have engaged in ultra vires actions by issuing stock, stock options, and rights without shareholder approval, thereby diluting the value and control of existing shareholders. (*Id.* ¶ 86).

The U.S. District Court for the Eastern District of New York transferred the case to this District under 28 U.S.C. § 1404(a) as an alternative to a request to dismiss for lack of personal jurisdiction and improper venue. The transferor court did not rule on contemporaneous requests to dismiss the First Amended Complaint ("FAC") for failure to comply with Rules 8(a), 9(b), and 23.1(b). This Court dismissed the FAC under the latter rule and Rule 11(a) because it was not verified or even signed by any attorney. Plaintiffs filed the Second Amended Complaint ("SAC"), and Defendants moved to dismiss it. The Court ruled that the SAC was not precluded by either of two previous actions litigated in the New York and Nevada state courts but dismissed it with leave to amend because it failed to comply with Rule 23.1's requirement to plead demand or futility with particularity. Plaintiffs have filed the Third Amended Complaint ("TAC"), and Defendants have moved to dismiss it.

## II.   LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47

(1957).  Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted.  A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).  The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts pertaining to his own case making a violation "plausible," not just "possible." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) (citing *Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").  That is, under the modern interpretation of Rule 8(a), a plaintiff must not only specify or imply a cognizable legal theory (*Conley* review), but also must allege the facts of his case so that the court can determine whether the plaintiff has any basis for relief under the legal theory he has specified or implied, assuming the facts are as he alleges (*Twombly-Iqbal* review).  Put differently, *Conley* only required a plaintiff to identify a major premise (a legal theory) and conclude liability therefrom, but *Twombly-Iqbal* requires a plaintiff additionally to allege minor premises (facts of the plaintiff's case) such that the syllogism showing liability is logically

complete and that liability necessarily, not only possibly, follows (assuming the allegations are true).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.  However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted).  Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

## III.   ANALYSIS

### A.   Rule 23.1

The TAC must "state with particularity . . . any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members []and the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b)(3)(A)–(B).  Plaintiffs previously alleged that "Aside from previous counsel's Demand Letter to Defendant/s [sic], Plaintiffs have not made another pre-suit demand . . . because such a demand would be futile . . . ." (Second Am. Compl. ¶ 94).  Plaintiffs alleged a demand would be futile because the current directors (Minor and Reynolds) and the former director (Marting) each

"face[] a substantial likelihood of liability for [their] actions during [their] membership on the Board" and these Defendants' own pursuit of the allegations would expose their own misconduct such that they are fatally conflicted. (*Id.* ¶¶ 96–100). The Court dismissed the SAC, with leave to amend. Plaintiffs have filed the TAC, and Defendants have moved to dismiss it.

The Court of Appeals recently affirmed a Rule 23.1 dismissal by Judge Mahan, discussing the Rule 23.1 standard and its interplay with state law:

> "A shareholder seeking to vindicate the interests of a corporation through a derivative suit must first demand action from the corporation's directors or plead with particularity the reasons why such demand would have been futile." *Rosenbloom v. Pyott*, 765 F.3d 1137, 1148 (9th Cir. 2014) (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 989 (9th Cir. 1999) (as amended)). Such requirement follows from "the general rule of American law . . . that the board of directors controls a corporation." *Potter v. Hughes*, 546 F.3d 1051, 1058 (9th Cir. 2008). The board's control includes and ought to include the decision whether to pursue litigation when the corporation may have suffered harm. Hence, "[a]bsent sufficient reason to doubt the directors' ability to make disinterested and independent decisions about litigation, the board is not only empowered but optimally positioned to make decisions on behalf of the corporation and, if appropriate, pursue litigation." *La. Mun. Police Emps.' Ret. Sys. v. Pyott*, 46 A.3d 313, 339 (Del. Ch. 2012), *rev'd . . . on other grounds [sub nom.] Pyott v. La. Mun. Police Emps.' Ret. Sys.*, 74 A.3d 612 (Del. 2013).

> The "demand futility rule" is also reflected in the heightened pleading standard set forth in Rule 23.1 of the Federal Rules of Civil Procedure, which requires shareholders who bring derivative suits to "state with particularity (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b)(3).

> Because Nevada is Wynn Resorts's state of incorporation, Nevada law governs whether the shareholders have adequately alleged demand futility. *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 108–09 (1991). Nevada, in turn, looks to Delaware law on shareholder demand futility. *Shoen v. SAC Holding Corp.*, 137 P.3d 1171, 1184 (Nev. 2006). Accordingly, "[w]hen evaluating demand futility, Nevada courts must examine whether particularized facts demonstrate: (1) in those cases in which the directors approved the challenged transactions, a reasonable doubt that the directors were disinterested or that the business judgment rule otherwise protects the challenged decisions; or (2) in those cases in which the challenged transactions did not involve board action or the board of directors has changed since the transactions, a reasonable doubt that the board can impartially consider a demand." *Id.*

The relevant board is the board as it was constituted when the shareholders filed their amended complaint. *Braddock v. Zimmerman*, 906 A.2d 776, 786 (Del. 2006).  As such, the shareholders must allege that at least half of the board, as it was constituted when the shareholders filed the amended complaint, was incapable of entertaining a pre-suit demand.

*La. Mun. Police Emps.' Retirement Sys. v. Wynn*, --- F.3d ----, 2016 WL 3878228, at *5 (9th Cir. 2016).

[A] plaintiff challenging a business decision and asserting demand futility must sufficiently show that either the board is incapable of invoking the business judgment rule's protections (e.g., because the directors are financially or otherwise interested in the challenged transaction) or, if the board is capable of invoking the business judgment rule's protections, that that rule is not likely to in fact protect the decision (i.e., because there exists a possibility of overcoming the business judgment rule's presumptions that the requisite due care was taken when the business decision was made).

*Shoen v. SAC Holding Corp.*, 137 P.3d 1171, 1181 (Nev. 2006) (citing *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984)).  Where a decision is carried out by a majority of disinterested directors, the presumption of due care is "bolstered," and the plaintiff has a "heavy burden" to avoid a pre-suit demand. *Id.* (citing *Grobow v. Perot*, 539 A.2d 180, 190 (Del. 1988)).

Plaintiffs allege demand futility in paragraphs 96–101 of the TAC.  Plaintiffs allege that Minor, Reynolds, and Marting were the three sole directors "at the time of the complaints enumerated herein." (*See* Third Am. Compl. ¶¶ 96–99, ECF No. 81).  They allege that Minor and Reynolds "face[] a substantial likelihood of liability for [their] longtime and continuing misconduct" and that Marting "faces a substantial likelihood of liability for his actions during his membership on the Board." (*Id.* ¶¶ 96–98).  Plaintiffs also allege that Reynolds and Marting were beholden to Minor based on their positions and compensation. (*Id.* ¶¶ 97–98).  More importantly, Plaintiffs have sufficiently alleged the composition of the Board at the relevant time, because they have alleged the composition of the Board at the time they filed the TAC. *See La. Mun. Police Emps.' Retirement Sys.*, 2016 WL 3878228, at *5 (citing *Braddock*, 906 A.2d at

786) ("The relevant board is the board as it was constituted when the shareholders filed their amended complaint.").  Plaintiffs allege that Minor and Reynolds were the sole current directors as of the filing of the TAC. (*See* Third Am. Compl. ¶ 95).  Plaintiffs must also allege that half or more of the Board is incapable of invoking the business judgment rule's protections because they are financially interested in the challenged transactions.  The Court must therefore examine the particular transactions alleged to have been wrongful and any allegations tending to show which Defendant was financially interested in the transaction.

Many allegations of wrongdoing concern Minor alone.  Under "breach of fiduciary duty," Plaintiffs allege that Minor failed to produce copies of financial records to shareholders that were entitled to them when requested, (*id.* ¶¶ 41–43), that Minor mailed a "Shareholder Update" in 2010 with false information, (*id.* ¶¶ 46–47), that Minor failed to reasonably consider sales leads offered by shareholders, (*id.* ¶ 49), that Minor lied to shareholders and others concerning a supposed imminent or existing contract with the government of China, (*id.* ¶¶ 58–64), that Minor fraudulently claimed to own a majority of PMMR shares that were in reality previously sold to other investors, with Minor having arranged the previous sales himself, (*id.* ¶¶ 67–73), and that Minor made false promises of imminent dividends in order to placate investors, knowing that PMMR had no funds from which to make such distributions, (*id.* ¶¶ 74–76).  Under "abuse of control," Plaintiffs allege that Minor treated PMMR's assets "as his personal ATM," transferring PMMR's assets into his own name, including at least some mining rights. (*Id.* ¶¶ 81–84).

The Court finds that Plaintiffs have sufficiently pled demand futility as to Minor by alleging that he was financially interested in one or more challenged transactions. *See Shoen*, 137 P.3d at 1181 (citing *Aronson*, 473 A.2d at 814)  And because Minor is alleged to have been one of only two directors when the TAC was filed, (*see* Third Am. Compl. ¶ 95), Plaintiffs have sufficiently pled demand futility without resort to allegations concerning Reynolds's alleged self-

interestedness, *see La. Mun. Police Emps.' Retirement Sys.*, 2016 WL 3878228, at *5 ("[T]he shareholders must allege that at least half of the board, as it was constituted when the shareholders filed the amended complaint, was incapable of entertaining a pre-suit demand."). The Court rejects Defendants' argument that allegations that a plaintiff has owned stock continuously since the dates(s) of the complained-of act(s) until the date of the lawsuit is insufficient under Rule 23.1 unless it includes specific dates of stock acquisition.  The Court can find no binding authority to that effect and finds the allegation that Plaintiffs acquired their stock before the dates of the complained-of acts and have continually held it to be sufficient.

Although not necessary in this case to show demand futility, Plaintiffs also make common allegations against multiple directors that the Court will list before addressing the arguments under Rule 12(b)(6).  Under "breach of fiduciary duty," Plaintiffs allege that Minor and Reynolds failed to hold shareholder meetings as required by law between 2012 and 2016, (*id.* ¶ 48), that all Defendants failed to register stock issuances with the SEC (but do not allege facts concerning which stock issuance(s)), (*id.* ¶ 50), that Defendants failed to file tax returns for the corporation (but do not allege tax years), (*id.* ¶ 51), that Defendants failed to file business permits (but note the error was remedied and identify no resulting harm), (*id.* ¶ 52), that USFS threatened to cancel PMMR's bond and mining rights, ultimately resulting in ongoing criminal and civil investigations against PMMR, (*id.* ¶¶ 53–57), and that all Defendants failed to prepare required audited financial documents, (*id.* ¶ 66).  Under "unjust enrichment," Plaintiffs allege that all Defendants unjustly enriched themselves in the amount of $15–20 million at the expense of PMMR, which had no meaningful sales, by approving large compensation packages and large consulting fees to themselves "and those close to them." (*Id.* ¶¶ 77–80).  For example, Minor paid for his son's flying lessons from PMMR's funds. (*Id.* ¶ 79).  Under "usurpation of corporate opportunities," Plaintiffs allege that all Defendants have approved the sale of PMMR's product

Orkyta to Wrightsville Fertilizer Co. ("WFC") with no indication of any payment having been made to PMMR, leading Plaintiffs to suspect that Defendants transferred the product to WFC for no compensation to PMMR, for further retail sale to benefit Defendants directly. (*Id.* ¶ 85). Under "ultra vires actions," Plaintiffs allege that all Defendants have issued shares of PMMR without shareholder approval in order to dilute the shares of previous shareholders. (*Id.* ¶ 86).

### B.    Rule 12(b)(6)

#### 1.    Fiduciary Duties and the Business Judgment Rule

Defendants argue that Plaintiffs have not rebutted the presumption of propriety under the business judgment rule as to any of the alleged bad acts.  Nevada's business judgment rule is codified, and in addition to the general provisions of the rule, it limits director liability to a corporation or shareholders to cases where "[t]he . . . act or failure to act constituted a breach of . . . fiduciary duties . . . [that] involved intentional misconduct, fraud or a knowing violation of law." Nev. Rev. Stat. § 78.138(7)(a)–(b) (2003).  The Court finds that Plaintiffs have sufficiently alleged intentional conduct and even fraud, as opposed to negligent acts, at least as to false statements for which Minor alone is implicated.  The "breach of fiduciary duty" acts implicating more than one director, however, are matters of negligence, e.g., failing to file tax returns or SEC filings.  The other acts alleged implicating more than one director, e.g., for unjust enrichment or usurpation, sufficiently allege intentional acts.  In summary, the business judgment rule prevents the claim against Minor for failing to follow up on sales leads and the claims against two or more Defendants for failing to make filings with the IRS, SEC, or other agencies, but the remainder of the claims survive the business judgment rule at the pleading stage.

#### 2.    Unjust Enrichment

In Nevada, the elements of an unjust enrichment claim or "quasi contract" are: (1) a benefit conferred on the defendant by the plaintiff; (2) appreciation of the benefit by the

defendant; and (3) acceptance and retention of the benefit by the defendant (4) in circumstances where it would be inequitable to retain the benefit without payment. *See Leasepartners Corp., Inc. v. Robert L. Brooks Trust*, 942 P.2d 182, 187 (Nev. 1997) (quoting *Unionamerica v. McDonald*, 626 P.2d 1272, 1273 (Nev. 1981) (quoting *Dass v. Epplen*, 424 P.2d 779, 780 (Colo. 1967))).  Plaintiffs have not sufficiently pled unjust enrichment because they do not allege to have willfully conferred a benefit upon Defendants that in equity must be returned or paid for. Their claims sound in corporate waste or other theories they have pled.

### 3.    Abuse of Control

As Defendants note, no such claim is cognizable in Nevada. *See In re Amerco Derivative Litig.*, 252 P.3d 681, 700 n.11 (Nev. 2011) (en banc) ("Nevada does not recognize a cause of action for abuse of control, and in the cases to which appellants cite [from other states], claims for abuse of control are essentially claims for breach of the fiduciary duty of loyalty.").

### 4.    Usurpation of Corporate Opportunity

This claim is duplicative of the breach of fiduciary duty claim. *See id.* at 700–01. Although the Court formally dismisses the separate claim, the underlying act (the alleged sale of Orkyta to WFC without payment for further retail sale by WFC, which was allegedly owned by Defendants) remains cognizable as a breach of fiduciary duty. *See id.*

### 5.    Ultra Vires Acts

The Court dismisses this claim with leave to amend because, as Defendants note, the complained of acts (the issuance of stock, options, and other rights without shareholder approval) have not been alleged to have been ultra vires absent an allegation that shareholder approval was required by the Articles (or Bylaws) for those acts.

///

///

1

### 6.      Marting and Reynolds

Defendants argue no bad acts are alleged as against Marting or Reynolds.  The Court disagrees. (*See* Third Am. Compl. ¶¶ 77–78, 85 (alleging that all Defendants granted themselves large compensation packages and usurped PMMR's opportunities via WFC)).

### 7.      Statutes of Limitations

Defendants argue that there may be a basis to dismiss under the relevant statutes but argue it is difficult to tell from the TAC when certain events occurred.  The Court will therefore not dismiss at the pleading stage, because this affirmative defense does not appear on the face of the pleading to be dismissed. *See United States ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013) (citing *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010)).

///

///

///

///

///

///

///

///

///

///

///

///

///

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 92) is GRANTED IN PART and DENIED IN PART, with leave to amend in part.  The claims for unjust enrichment and abuse of control are dismissed, without leave to amend.  The claim for ultra vires acts is dismissed, with leave to amend.  The claim for usurpation of corporate opportunities is formally dismissed, without leave to amend, but remains in substance as part of the claim for breach of fiduciary duty.  That aspect of the breach of fiduciary duty claim, as well as the aspect of the claim concerning compensation packages, may proceed against all Defendants.  Additionally, the breach of fiduciary duty claim may proceed against Minor as to the allegations concerning false statements and improper withholding of financial records to shareholders.  The breach of fiduciary duty claim is otherwise dismissed, without leave to amend.

IT IS SO ORDERED.

Dated this 24th day of August, 2016.

_____
ROBERT C. JONES
United States District Judge