# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

JOSEPH WEINFELD, et al.,

    Plaintiffs,

vs.

BILL L. MINOR, et al.,

    Defendants.

3:14-cv-00513-RJC-WGC

**ORDER**

Pending before the Court are Defendants' Motion for Attorneys' Fees and Costs (ECF No. 160) and Plaintiffs' Motion for Re-Taxation of Costs (ECF No. 186). Defendants argue that they should be awarded attorneys' fees and costs, because Plaintiffs brought this suit without reasonable grounds, and because Defendants are the prevailing party. The Court agrees.

## I. FACTS AND PROCEDURAL HISTORY

Sixteen individuals and Congregation Beth Joseph brought this shareholder derivative action in the Eastern District of New York on behalf of Precious Minerals Mining & Refining Corp. ("PMMR") against Bill Minor, John Reynolds, and Walter Marting for breach of fiduciary duties, unjust enrichment, abuse of control, usurpation of corporate opportunities, and ultra vires actions. PMMR is a Nevada corporation holding certain mining rights in Lyon County, which it exercises under permission of the U.S. Forest Service ("USFS") (which owns the relevant land) to mine a substance sold commercially as Orykta and used as fertilizer and animal feed. (Third

Am. Compl. ¶ 1, ECF No. 54.) From 1999 to 2001, Minor sold shares of PMMR to investors throughout the United States and Canada, including Plaintiffs, who are New York residents. (*Id.* ¶¶ 3, 31.)

The U.S. District Court for the Eastern District of New York transferred the case to this District under 28 U.S.C. § 1404(a) as an alternative to a request to dismiss for lack of personal jurisdiction and improper venue. The transferor court did not rule on contemporaneous requests to dismiss the First Amended Complaint ("FAC") for failure to comply with Rules 8(a), 9(b), and 23.1(b). This Court dismissed the FAC under the latter rule and Rule 11(a) because it was not verified or even signed by any attorney. Plaintiffs filed the Second Amended Complaint ("SAC"), and Defendants moved to dismiss it. The Court ruled that the SAC was not precluded by either of two previous actions litigated in the New York and Nevada state courts but dismissed it with leave to amend because it failed to comply with Rule 23.1's requirement to plead demand or futility with particularity.

Plaintiffs filed the Third Amended Complaint ("TAC"), and Defendants moved to dismiss it. The Court refused to dismiss the TAC under Rule 23.1 but dismissed certain claims on the merits, with leave to amend some of them. Specifically, the Court permitted the claim for breach of fiduciary duty to proceed against all Defendants as to the allegations concerning usurpation of corporate opportunities and compensation packages and permitted the claim to proceed against Minor as to the allegations concerning false statements and improper withholding of financial records. The Court otherwise dismissed the breach of fiduciary duty claim, as well as the claims for unjust enrichment and abuse of control, without leave to amend, and dismissed the claim for ultra vires acts, with leave to amend. Plaintiffs did not further amend.

After further litigation, both parties moved for summary judgment, and the Court granted summary judgment for Defendants on all Plaintiffs' remaining claims. (ECF No. 157.) Defendants have now filed a motion seeking costs and attorneys' fees, and Plaintiffs' have filed a motion for re-taxation of costs.

## II. LEGAL STANDARDS

All parties agree that "[i]n diversity actions, federal courts are required to follow state law in determining whether to allow attorneys' fees." *Swallow Ranches, Inc. v. Bidart*, 525 F.2d 995, 999 (9th Cir. 1975). Nevada Revised Statute § 18.010(2)(b) provides that a prevailing party can obtain an award of attorneys' fees if the court finds that the action was "brought or maintained without reasonable ground." The Nevada Supreme Court has often expressed that the decision to award attorneys' fees under section 18.010(2)(b) is "within the sound discretion of the district court." *Kahn v. Morse & Mowbray*, 117 P.3d 227, 238 (Nev. 2005). However, courts are required by statute to "liberally construe the provisions of [NRS § 18.010] in favor of awarding attorney's fees in all appropriate situations . . . to punish for and deter frivolous or vexatious claims and defenses." Nev. Rev. Stat. § 18.010(2)(b). To support such an award, "there must be evidence in the record supporting the proposition that the complaint was brought without reasonable grounds or to harass the other party." *Semenza v. Caughlin Crafted Homes*, 901 P.2d 684, 687 (Nev. 1995). Such analysis depends on the circumstances of the case. *Id.* at 688.

## III. ANALYSIS

### a. Attorneys' Fees

Defendants argue that they should be awarded attorneys' fees. The Court agrees: Defendants are a prevailing party, because they successfully defended the law suit and obtained summary judgment. *Valley Elec. Ass'n v. Overfield*, 106 P.3d 1198, 1200 (Nev. 2005) (stating that a party can prevail under NRS § 18.010 if a party succeeds on any significant issue in

litigation which achieves some of the benefit it sought in bringing the suit, counterclaim, or motion). And the Court finds that there is evidence in the record to support the proposition that Plaintiffs brought their complaint without reasonable grounds.

The Nevada Supreme Court has recognized that a claim is groundless if the complaint contains allegations which are not supported by any credible evidence at trial. *Semenza*, 901 P.2d at 688. The court has clarified, however, that "[i]f an action is not frivolous when it is initiated, then the fact that it later becomes frivolous will not support an award of [attorneys'] fees." *Id.* (quoting *Duff v. Foster*, 885 P.2d 589, 591 (Nev. 1994). Therefore, "the proper inquiry is whether the claim 'was brought' without reasonable grounds." *Barozzi v. Benna*, 918 P.2d 301, 303 (Nev. 1996) (quoting *Duff*, 885 P.2d at 591).

In *Barozzi*, the Nevada Supreme Court confirmed that under NRS 18.010(2)(b) groundlessness "is determined at the time the claim is initiated." *Id.* Although *Allianz Ins. Co. v. Gagnon*, 860 P.2d 720, 724 (Nev. 1993) stated that a claim is groundless if it is not supported by credible evidence at trial, the court explained that *Allianz* did not state a sufficient condition. *Barozzi*, 918 P.2d at 303. In *Allianz*, the court recognized the argument that respondents' claims were well grounded when brought but had become stale prior to trial, if factually true. 860 P.2d at 725. However, *Allianz* held that respondents' argument was not factually true and was inconsistent with the district court's finding of fraud. *Id.* The district court determined that respondents' claims were fraudulent, but did not grant attorneys' fees, because it could not find authority to support the proposition that fraudulent claims were also groundless. *Id.* at 724. Reversing the district court, the court stated in *Allianz* that a claim is groundless if it is not supported by credible evidence at trial. *Id.* Thus, no conflict exists in the caselaw regarding the "point in time when a claim is determined to be groundless." *Barozzi*, 918 P.2d at 303. *Allianz* did not need to analyze whether respondents' claims were well grounded but had become stale

prior to trial, and later cases have verified that groundlessness is determined at the time of filing. *Id.*

Here, Plaintiffs assert that their claims were well grounded when filed; however, Plaintiffs' argument is inconsistent with this Court's Order granting summary judgment. This is not a case that the Supreme Court of Nevada has recognized where a claim is well grounded when filed but becomes stale, either through time or new developments. This is a case where plaintiffs filed a complaint without sufficient evidence and after months of litigation have failed to find any meaningful evidence to survive summary judgment. The evidence has not grown stale, because it never existed.

First, summary judgment was granted on Plaintiffs' usurpation of corporate opportunities claims, because after Defendants presented evidence to negate usurpation, Plaintiffs did not adduce any contrary evidence or even "address [Defendants'] claim in response." (Order Grant. Summ. J. 7:3–7:11, ECF No. 157.)

Second, summary judgment was granted concerning Plaintiffs' breach of fiduciary duties claim over Defendants compensation packages, because Plaintiffs adduced "no evidence to create a triable issue of material fact" and again failed to "address . . . [Defendants'] claim in their response." (*Id.* 7:13–8:8.)

Third, summary judgment was granted over Plaintiffs' claim that Minor lied about the existence of a contract to sell in China. Although there was a genuine issue of material fact whether there was any purported contract to sell in China, summary judgment was granted, because there was "no evidence adduced that Minor ever made any false statements to any Plaintiff, directly or indirectly, concerning any contract to sell Orykta in China." (*Id.* 9:9–10:17.) In fact, Plaintiffs could not even provide "a single self-interested attestation that Minor ever made any statement to any of them concerning the sale of Orykta in China." (*Id.* 10:8–10:10.)

Fourth, summary judgment was granted concerning purported false statements that Minor had promised to pay Plaintiffs dividends, because Defendants demonstrated "a complete lack of evidence to support [this claim], and Plaintiffs [did] not adduced any evidence in response that any false statements promising to pay dividends were made." (*Id.* 11:14–11:24.)

Fifth, summary judgment was granted over Plaintiffs' claim that Minor made materially false statements concerning his majority shareholder status, because Plaintiffs provided "no evidence that Minor was not the majority shareholder at the time he made any relevant statements." (*Id.* at 12:12–12:14.) Moreover, Plaintiffs could not "point to any alleged statements by Minor concerning his majority shareholder status at all, identify to whom he made any such statements, or show how they relied on those claims to their detriment, or critically, . . . show how those alleged statements harmed PMMR." (*Id.* at 12:14–12:17.)

Sixth, summary judgment was granted on Plaintiffs' misrepresentation of company sales claim, because Plaintiffs were unable to provide any evidence of misrepresentation and did not even claim in their response "that such evidence exists." (*Id.* 14:6–14:13.) Thus, this Court found that no evidence existed that Minor made any false statements or misrepresentation of sales. (*Id.*)

Seventh, the Court granted summary judgment on the claim that Plaintiffs were denied access to company financial records, because Plaintiffs produced no evidence of written demand and did not even "claim the requirements of the statute were satisfied." (*Id.* 15:3–15:20.) The statute in question required written demand, and in six Plaintiff depositions individual plaintiffs admitted that they failed make any written demand. (*Id.*) Plaintiffs produced no contrary evidence, and simply argued that the statute should not apply. Although a good faith argument for the modification of existing law is not a groundless claim, Plaintiffs did not make a good faith argument for the modification of law. (*Id.*) Plaintiffs did not argue that the statute should not apply on its face or that the legislative intent or commentary supported an alternative

interpretation that differed from the plain meaning of the statute. (*Id.*) Plaintiffs "used the words 'intent of this statute' but simply ma[d]e conclusory statements about the bad effect of interpreting the statute as it is written." (*Id.*) The statute "clearly" applied, and the Court determined that Plaintiffs "clearly" had no evidence that they satisfied it. (*Id.*)

Accordingly, new developments did not alter Plaintiffs' evidence. Plaintiffs lacked adequate evidence from the start, and they failed to obtain evidence through discovery. At the summary judgment stage, which represented the apex of Plaintiffs' evidentiary knowledge, summary judgment was granted because Plaintiffs did not have evidence to support their claims.

Although some of Plaintiffs claims survived motions to dismiss, that does not mean that those claims were well grounded. At the motion to dismiss stage, a court is not examining a party's evidence, which is what determines whether a complaint is reasonably grounded. A claim survives a motion to dismiss when it is sufficiently pled, meaning that a plaintiff has included enough factual content, viewed as true, "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of wrongdoing. *Id.* at 556. Thus, if a plaintiff includes enough facts "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* (citation omitted). Consequently, surviving a motion to dismiss is not equivalent to being well grounded, which is a determination based on evidence. It only means that a claim was well pled—a determination based on legal and factual assertions.

Moreover, the Nevada legislature has decreed that courts are to "liberally" construe NRS § 18.010 toward granting attorneys' fees. It is simply not enough to avoid paying attorneys' fees for Plaintiffs to claim that they believed their lawsuit was well grounded based on conclusory

and self-serving averments. "Reasonable grounds" is an objective benchmark not satisfied by mere subjective belief. When a plaintiff chooses to file a lawsuit believing that he will find supporting evidence during discovery, he risks the consequences when he does not. As this Court has stated: "Implicit in NRS § 18.010(2)(b) is the Nevada Legislature's judgment that litigants in this state must be cautious in their pursuit of legal claims, and take upon themselves the responsibility of ensuring that there is a reasonable basis for those claims before asserting them in court." *Greenwood v. Ocwen Loan Servicing LLC*, No. 316CV00527RCJVPC, 2018 WL 3550217, at *2 (D. Nev. July 24, 2018). Thus, a plaintiff must ensure that there is a reasonable basis for his subjective belief before filing a lawsuit in Nevada, or risk paying for it. Plaintiffs failed to do that here.

In the present case, Plaintiffs filed their law suit without reasonable grounds and persisted without sufficient evidence, amassing legal expenses for both Plaintiffs and Defendants. Nevada has determined that the Plaintiffs should pay for their decisions. Therefore, based upon this Court's previous Order and findings, the Court awards Defendants reasonable attorneys' fees to be paid by Plaintiffs. Plaintiffs further argument that Defendants did not comply with the perquisite rules of itemization is incorrect and will be addressed below.

### b. Reasonableness of Fee

In diversity cases, courts apply federal law if the law is procedural and state law if the law is substantive. *Walsh v. Kelly*, 203 F.R.D. 597, 598 (D. Nev. 2001) (*citing Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Accordingly, the first step in any *Erie* analysis is to determine whether the law involved is procedural or substantive. "If the law is procedural, the federal law will apply, if substantive, the court will apply the law of the forum state." *Id.* Because state law governing recovery of attorneys' fees is considered substantive for *Erie* purposes, "federal courts are required to follow state law in determining whether to allow attorneys' fees." *Swallow*

*Ranches*, 525 F.2d at 999. *See Shakey's Inc. v. Covalt*, 704 F.2d 426, 435 (9th Cir. 1983). As a result, both the deservedness and reasonableness of attorneys' fees are governed by state law, since both components are substantive state law determinations.

Under Nevada law, this Court has the discretion to determine whether attorneys' fees are reasonable, tempered by reason and fairness. *Shuette v. Beazer Homes Holdings Corp.*, 124 P.3d 530, 548-49 (Nev. 2005). In determining the amount of fees to award, the Court is not limited to one specific approach, "its analysis may begin with any method rationally designed to calculate a reasonable amount, including those based on a 'lodestar' amount or a contingency fee." *Id.* at 549. However, the Court must consider the requested amount in light of the factors enumerated in *Brunzell v. Golden Gate Nat. Bank*, 455 P.2d 31 (Nev.1969), which include the advocate's professional qualities, the nature of the litigation, the work performed, and the result. *See also Greenwood v. Ocwen Loan Servicing LLC*, No. 316CV00527RCJVPC, 2018 WL 3550217, at *3 (D. Nev. July 24, 2018) (using the same framework under § 18.010(2)(b) to determine the reasonableness of attorneys' fees); *Blom v. Floodsuckers, LLC*, No. 3:12-CV-570-RCJ-WGC, 2013 WL 3463260, at *4 (D. Nev. July 9, 2013) (same). The Supreme Court of Nevada has made clear that whatever method a court uses, "the result will prove reasonable as long as the court provides sufficient reasoning and findings in support of its ultimate determination." *Shuette*, 121 Nev. at 865.

Defendants request a total of $179,747.50 in attorneys' fees. The Court finds that this amount is reasonable. First, the amount is reasonable in light of the total hourly rate and distribution of work. Approximately 92% of the work was billed at a very reasonable hourly rate of $275 or lower, and the amount of attorneys' fees was significantly reduced by 269 hours of work completed by paralegals. While one of the attorneys, Michael J. Morrison's, hourly rate of $500 was high compared to the rates of the three other attorneys who worked on Defendants'

case, Mr. Morrison did less than ten percent of the hourly work. Thus, Defendants' counsel appropriately distributed the workload and took effective steps to mitigate their fees leading to a reasonable average rate of $263.95 per hour.

Second, the amount is reasonable in light of the professional qualities of Defendants' counsel. Four experienced attorneys worked on Defendants' behalf. Mr. Morrison charged the highest rate but was the most experienced attorney. Mr. Morrison is a sole practitioner and has practiced law in Nevada since 1977. Mr. Morrison has significant experience in cases involving the type of claims and issues raised by Plaintiffs, specifically including corporate law, securities law, and mining law. The other three attorneys who worked on Defendants' behalf, Jason Peak, Ryan Leary, and Josh Halen, are attorneys with Laxalt and Nomura, which also represented Defendants. They charged $275, $225, and $225 per hour, respectively. Mr. Peak was admitted to practice law in Nevada in 1999 and has worked at Laxalt and Nomura since 2002 practicing general litigation. Mr. Leary was admitted to the Nevada Bar in 2009 and the California Bar in 2012, and he has worked at Laxalt and Nomura since 2011; Mr. Halen is a similarly experienced attorney. Reading this information alone, it is clear that Defendants were not represented by novices—they were represented by highly experienced attorneys with 69 years or more of combined legal experience. Accordingly, the experience of Defendants' counsel supports their individual and overall fees.

Third, the amount is reasonable given the work performed and the result obtained. Counsel successfully had this case transferred to this district after demonstrating that the U.S. District Court for the Eastern District of New York lacked personal jurisdiction and was an improper venue. In this Court, Defendants' counsel successfully moved to dismiss Plaintiffs' First and Second Amended Complaints and had several claims dismissed on the merits from Plaintiffs' Third Amended Complaint. After further litigation, counsel obtained summary

judgment on all of Plaintiffs' remaining claims. While a considerable number of hours were invested in this case, Plaintiffs' actions increased the complexity and amount of work required. If Plaintiffs had filed in the proper jurisdiction originally and had filed a suitable complaint that conformed to the rules on the first, instead of third, try, the amount of fees would have been less. Defendants cannot be penalized for Plaintiffs mistakes that required more work. Counsel's motions were well-written, addressed pertinent legal issues, and cited relevant and accurate law. As a result, given the work performed, the complexity of the case involving numerous claims and issues, and the result obtained, the total hours and attorneys' fees requested are reasonable.

Plaintffs' arguments about the local rules are unpersuasive and this Court declines to exercise its discretion to deny Defendants' Motion for Attorneys' Fees. After four years of litigation brought about and maintained without evidence, foisting significant legal expenses on Defendants, it would be inequitable to deny reasonable attorneys' fees over a technicality in the local rules, and it would be superfluous to deny the current motion but allow Defendants to amend their request. Defendants are entitled to attorneys' fees and further document is not needed. While Plaintiffs cite, and in some cases, italicize and bolden portions of the local rules, Defendants fail to identify a crucial word: ***may***. When discussing what should be included, the local rules state that failure to include information identified "may" be considered "a consent to the denial of the motion." LR II 54-14(d). Furthermore, Plaintiffs' argument about itemization is factually incorrect.

Defendants' Errata, which this Court approved, provides full documentation for the attorneys' fees requested. Based on the Errata, the Court was able to reach the exact amount requested by Defendants—$179,747.50. The following is a breakdown of the itemized billing statements included in the Errata.

| Attorneys' Fees | | | | | | | |
|---|---|---|---|---|---|---|---|
| Oct. 2014-March 2018 | | | | Apr. 2017 | | | |
| Att'y | Rate | Hrs | Fee | Att'y | Rate | Hrs | Fee |
| MJM | $500.00 | 54.90 | $27,450.00 | JP | $275.00 | 25.00 | $6,875.00 |
| | | | | RL | $225.00 | 1.20 | $270.00 |
| | Total | **54.90** | **$27,450.00** | | Total | **26.20** | **$7,145.00** |
| May 2017 | | | | Sept. 2017 | | | |
| Att'y | Rate | Hrs | Fee | Att'y | Rate | Hrs | Fee |
| JP | $275.00 | 68.9 | $18,947.50 | JP | $275.00 | 2.1 | $577.50 |
| RL | $225.00 | 110.4 | $24,840.00 | RL | $225.00 | 4.3 | $967.50 |
| | Total | **179.3** | **$43,787.50** | | Total | **6.4** | **$1,545.00** |
| July 2017 | | | | Aug. 2017 | | | |
| Att'y | Rate | Hrs | Fee | Att'y | Rate | Hrs | Fee |
| JP | $275.00 | 120.7 | $33,192.50 | JP | $275.00 | 11.8 | $3,245.00 |
| RL | $225.00 | 173.9 | $39,127.50 | RL | $225.00 | 86.1 | $19,372.50 |
| JH | $225.00 | 13.5 | $3,037.50 | JH | $225.00 | 8.2 | $1,845.00 |
| | Total | **308.1** | **$75,357.50** | | Total | **106.1** | **$24,462.50** |

The months in the table correspond to the months that legal services were rendered through. In the table, paralegal fees associated with Chris Behling (CB) and Deborah Penhale (DP) were eliminated. When adding the fees associated with the four lawyers who worked on Defendants' behalf—Michael J. Morrison (MJM); Jason Peak (JP); Ryan Leary (RL); and Josh Halen (JH)—the total corresponds to the amount requested. The number that Plaintiffs claim is appropriate is only reachable by subtracting the fees billed through July 2017. Although Plaintiffs are correct that complete invoices were not provided for fees billed through July 2017 in Defendants' original filing on April 10 and subsequent filing on April 11, Defendants' Errata includes complete invoices and itemization for the fees billed through July 2017. Nearly every day is accounted for in the documentation provided in Defendants' Errata for the period in question, May 31, 2017 to July 31, 2017, and the Court cannot find any omissions in the twenty-three pages accounting for that period. Therefore, no reason exists to exclude fees rendered through

July 2017 by Laxalt & Nomura. Accordingly, the Court awards Defendants' $179,747.50 in attorneys' fees.

### c. Costs

"An award of standard costs in federal district court is normally governed by Federal Rule of Civil Procedure 54(d), even in diversity cases." *Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1022 (9th Cir. 2003). Rule 54(d)(1) provides that "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." By its terms, "costs are to be awarded as a matter of course in the ordinary case," but discretion is vested in the district court to refuse to award costs. *Ass'n of Mexican-Am. Educators v. State of California*, 231 F.3d 572, 593 (9th Cir. 2000). When denying costs, however, a district court's discretion is not unlimited. The Court of Appeals has stated that "[a] district court must 'specify reasons' for its refusal to award costs," and those reasons must be appropriate. *Champion Produce*, 342 F.3d at 1022 (quoting *Mexican-Am. Educators*, 231 F.3d at 591). Thus, the "requirement that a district court give reasons for denying costs is, in essence, a requirement that the court explain why a case is not 'ordinary' and why, in the circumstances, it would be inappropriate or inequitable to award costs." *Id.* (quoting *Mexican-Am. Educators*, 231 F.3d at 593).

Applying that standard here, the Court finds that this is an ordinary case and circumstances do not exist to justify denying costs. Plaintiffs argument that paralegal fees should not be awarded is unpersuasive. Failing to award paralegal fees to prevailing parties would perversely incentivize lawyers to do more work themselves driving up the cost of legal services. Parties should not be punished because their lawyers effectively reduced their overall fee by appropriately dividing the work between paralegals and attorneys. Consequently, the Court awards Defendants' $39,218.15 in non-taxable costs and paralegal fees.

Plaintiffs further argument that Defendants are attempting to recover the same costs twice is inaccurate. Compiling the billings for paralegal fees and non-taxable costs, the total amount of non-taxable costs is $39,218.15. Based on the information provided in Defendants' Errata, the Court composed the following tables for paralegal fees and costs.

| Paralegal Fees | | | | | | | |
|---|---|---|---|---|---|---|---|
| May. 31 2017 | | | | July. 2017 | | | |
| Para. | Rate | Hrs | Fee | Para. | Rate | Hrs | Fee |
| CB | $135.00 | 65.4 | $8,829.00 | CB | $135.00 | 113.7 | $15,349.50 |
| RL | | | | DP | $135.00 | 78.4 | $10,584.00 |
| | Total | **65.4** | **$8,829.00** | | Total | **192.1** | **$25,933.50** |
| Aug. 2017 | | | | Sept. 2017 | | | |
| Para. | Rate | Hrs | Fee | Para. | Rate | Hrs | Fee |
| CB | $135.00 | 12.1 | $1,633.50 | | | 0 | |
| | Total | **12.1** | **$1,633.50** | | | **0** | **$0.00** |

| Costs | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Firm | MJM | Laxalt & Nomura | | | | | | |
| Date | Oct. 2014-March 2018 | Apr. 2017 | May 2017 | July 2017 | Aug. 2017 | Sept. 2017 | Oct. 2017 | Feb. 2018 |
| Costs | $2,822.15 | $10.66 | $433.77 | $7,110.96 | $6,430.90 | $48.71 | $37.50 | $72.80 |
| Type | Non-taxable Costs | Taxable Costs | | | | | | |

When the total amount of paralegal fees and non-taxable costs are added together, the amount matches the exact amount requested by Defendants—$39,218.15. The remaining taxable costs were generated from bills by Laxalt & Nomura, which in total amount to $14,145.30 in costs. Of that number, Defendants only asked for $11,457.35 in taxable costs, which was granted. Therefore, Plaintiffs' argument that taxable costs were excessive and duplicative fails. As a result, the Court denies Plaintiffs' Motion for Re-Taxation of Costs (ECF No. 186) and awards Defendants $39, 218.15 in non-taxable costs and paralegal fees.

///

///

///

## CONCLUSION

IT IS HEREBY ORDERED that Defendants' Motion for Attorneys' Fees and Costs (ECF No. 160) is GRANTED. Defendants' are hereby awarded attorneys' fees in the amount of $179,747.50 and non-taxable costs and paralegal fees in the amount of $39,218.15.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Re-Taxation of Costs (ECF No. 186) is DENIED.

IT IS SO ORDERED.

DATED: This 11th day of March, 2019.

_____
ROBERT C. JONES
United States District Judge